IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JAY M. DREW,<br><br>    Plaintiff,<br><br>v.<br><br>COBB COUNTY, GEORGIA,<br>SONYA ALLEN, in Her Individual<br>and Official Capacities, and<br>NATHANIAL NATION, in His<br>Individual and Official Capacities,<br><br>    Defendants. | CIVIL ACTION FILE<br><br>NO. 1:20-CV-4683-MHC |

## ORDER

Before the Court is Defendants' Motion to Dismiss Plaintiff's First Amended Complaint [Doc. 23]. Plaintiff Jay M. Drew ("Drew") has not filed any opposition to the Motion to Dismiss.[1]

---

[1] See Kramer v. Gwinnett Cnty., 306 F. Supp. 2d 1219, 1221 (N.D. Ga. 2004) ("[A] party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed."); LR 7.1(B), NDGa ("Failure to file a response shall indicate that there is no opposition to the motion."). Although the Motion to Dismiss is unopposed, this Court must consider the arguments for dismissal on the merits. See Giummo v. Olsen, 701 F. App'x. 922, 924 (11th Cir. 2017) (holding that the district court abused its discretion by interpreting Local Rule 7.1B as permitting it to grant a motion to dismiss solely on the basis that the plaintiff failed to timely file a brief opposing the motion to dismiss).

## I.   BACKGROUND[2]

The above-styled lawsuit filed on November 17, 2020, arises from a divorce proceeding that occurred in the Superior Court of Cobb County. Drew alleges that he was sued in a contempt action brought by his former wife based upon his failure to comply with the terms of a divorce decree order entered by Cobb County Superior Court Judge Kimberly C. Childs. Am. Compl. ¶¶ 16-20. On October 4, 2018, during a lunch break on the day of the contempt hearing, Drew experienced a medical emergency and was admitted to the hospital. Id. ¶ 19. His attorney requested a continuance of the contempt hearing, which Judge Childs denied. Id. ¶¶ 19-20. The court continued with the hearing in Drew's absence and, "without allowing Mr. Drew an opportunity to present his case," the Court entered an order requiring Drew to pay $14,505.00 to the Cobb County Sheriff's Office. Id. ¶ 20; Oct. 4, 2018 Order in Drew v. Drew, Civil Action No. 18-1-4912-58 (Superior Court of Cobb County) ("Contempt Order") [Doc. 23-2 at 2-4].[3] The order

---

[2] Because this case is before the Court on a motion to dismiss, the facts are presented as alleged in Drew's First Amended Complaint ("Am. Compl.") [Doc. 12]. See Silberman v. Miami Dade Transit, 927 F.3d 1123, 1128 (11th Cir. 2019) (citation omitted).

[3] Drew did not attach the October 4, 2018, Contempt Order to the Amended Complaint, but it is attached to Defendants' Motion to Dismiss. Given that the Contempt Order is specifically referenced in the Amended Complaint, its contents are not in dispute, and is central to Drew's claims in this case, the Court will

2

included a provision calling for Drew's arrest if he did not make the $14,505.00 payment by November 5, 2018. Id.

On the date the $14,505.00 payment was due (November 5, 2018), Drew filed a motion for new trial or, alternatively, to set aside the Contempt Order, and alleged that the filing of the motion "supersedes [the] enforcement of the trial court's Order of October 4, 2018" and that "Defendant Childs failed to advise the Sheriff of Cobb County." Id. ¶¶ 21, 23. Drew alleges that on November 6, 2018, after Plaintiff had filed his motion for a new trial, Defendant Sonya Allen ("Allen") authored a Memorandum to Defendant Nathanial Nation ("Nation") (both employees of the Cobb County Sheriff's Department) that contained an affidavit from Allen averring that Drew had failed to make the payments required by Judge Childs' Contempt Order. Id. ¶ 3, 22; Memo from Allen to Nation (Nov. 6, 2018) [Doc. 23-2 at 1].[4]

---

consider the document. See Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1284 (11th Cir. 2007).

[4] Drew did not attach the November 6, 2018, Memorandum to the Amended Complaint, but it is attached to the Defendants' Motion to Dismiss. Given that it is specifically referenced in the Amended Complaint, its contents are not in dispute, and is central to Drew's claims in this case, the Court will consider the document. See Fin. Sec. Assurance, Inc., 500 F.3d at 1284.

Drew was arrested November 26, 2018, after he was pulled over for a traffic stop and taken to the DeKalb County Jail based on the Contempt Order. Am. Compl. ¶ 26. Subsequently, Drew's attorney presented Judge Childs with an order for Drew's immediate release based on O.C.G.A. § 9-11-62, but Judge Childs declined to enter the proposed order and instead conditioned Drew's release on payment of $8,000.00, a portion of the amount he owed based on the Contempt Order. Id. ¶ 27. Drew alleges that he was unlawfully detained for fourteen days; however, the record indicates that he was released after four days, on November 30, 2018. Id. ¶ 28; see also McLaws v. Drew, 355 Ga. App. 162, 165 (2020) ("On November 30, 2018, the trial court entered a consent order releasing Jay from jail, noting his payment of $8,000, and requiring him to pay the balance of $6,505 on or before December 17.").

Based on the foregoing factual allegations, Drew filed a multi-count Amended Complaint[5] on January 11, 2021, alleging the following claims:

---

[5] The caption of the Amended Complaint names only Cobb County, Georgia; Sonya Allen; and Nathanial Nation as defendants. Similarly, those three Defendants are the only ones listed in the "Parties" Section of the Amended Complaint. Am. Compl. ¶¶ 1-4. Nevertheless, the Amended Complaint continually references Judge Kimberly Childs as a defendant and names her in several of the counts. See id. ¶¶ 20-21, 23, 26-27, 30, 32, 39, 41, 48, 55, 61, 63, 70, 75-77, 80-81, 83-84, 87, 91. Additionally, the introductory paragraph states that the Amended Complaint is filed against Sheriff Craig D. Owens, among

4

(1) unlawful seizure and detention in violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983 (2012) (Count One), Am. Compl. ¶¶ 34-51; (2) violation of due process under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 (2012) (Count Two), Am. Compl. ¶¶ 52-58; (3) unlawful seizure and detention in violation of the Georgia Constitution (Count Three), Am. Compl. ¶¶ 59-73; (4) false imprisonment pursuant to O.C.G.A. § 51-7-1 (Count Four and Six), Am. Compl. ¶¶ 74-78, 86-89; (5) intentional infliction of emotional distress (Count

---

others. There is no indication in the record that Judge Childs or Sheriff Owens was served with process in this case.

The Court will assume Drew did not intend to name either Childs or Owens as defendants. The Court notes that if Drew had named Judge Childs as a defendant, she would be entitled to absolute judicial immunity. It is well-settled that "judges are entitled to absolute judicial immunity from damages for those acts taken while they are acting in their judicial capacity unless they acted in a clear absence of all jurisdiction." Sibley v. Lando, 437 F.3d 1067, 1070 (11th Cir. 2005) (internal citation omitted); see also Stewart v. Baldwin Cnty. Bd. of Educ., 908 F.2d 1499, 1507 (11th Cir. 1990) (citing Cleavinger v. Saxner, 474 U.S. 193, 199 (1985), and Pierson v. Ray, 386 U.S. 547 (1967)). Judicial immunity applies "'even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction.'" Sibley, 437 F.3d at 1070 (quoting Bolin v. Story, 225 F.3d 1234, 1239 (11th Cir. 2000)). All of the allegations regarding Judge Childs in Drew's Amended Complaint involve her actions taken in her judicial capacity.

5

Five), Am. Compl. ¶¶ 79-85; and (6) punitive damages (Count Seven[6]), Am. Compl. ¶¶ 90-92.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). While this pleading standard does not require "detailed factual allegations," the Supreme Court has held that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Under Federal Rule of Civil Procedure 12(b)(6), a claim will be dismissed for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. The Supreme Court has explained this standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

---

[6] Although the Amended Complaint states that this is Count Six, it is actually Count Seven.

6

Ashcroft, 556 U.S. at 678 (internal citation omitted). Thus, a claim will survive a motion to dismiss only if the factual allegations in the pleading are "enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

At the motion to dismiss stage, the court accepts all well-pleaded facts in the plaintiff's complaint as true, as well as all reasonable inferences drawn from those facts. McGinley v. Houston, 361 F.3d 1328, 1330 (11th Cir. 2004); Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). Not only must the court accept the well-pleaded allegations as true, but these allegations must also be construed in the light most favorable to the pleader. Powell v. Thomas, 643 F.3d 1300, 1302 (11th Cir. 2011). However, the court need not accept legal conclusions, nor must it accept as true legal conclusions couched as factual allegations. Iqbal, 556 U.S. at 678. Thus, evaluation of a motion to dismiss requires the court to assume the veracity of well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

### III. ANALYSIS

Defendants contend that the Amended Complaint should be dismissed because it fails to state a claim upon which relief can be granted against any of the named Defendants. See Defs.' Br. in Supp. of Mot. to Dismiss Pl.'s First Am. Compl. ("Defs.' Br.") [Doc. 23-1] at 7-35.

### A. Federal Claims Against Cobb County

Among other arguments, Defendants argue that Cobb County cannot be liable for any claim brought pursuant to 42 U.S.C. § 1983 because Drew has failed to allege that there was a county policy that caused any injury to Drew. Defs.' Br. at 14-18. The Court agrees.

A local government may not be sued under Section 1983 simply because an injury is inflicted by its employees or agents. See McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004) (holding that a 1983 "plaintiff cannot rely upon the theory of *respondeat superior* to hold the County liable") (citing Monell v. Dept of Soc. Servs., 436 U.S. 658, 692 (1978)). Instead, it is only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" for which the government is responsible under Section 1983. Monell, 436 U.S. 658, 694 (1978). The Eleventh Circuit has determined that in order "to impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted a deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." McDowell, 392 F.3d at 1289.

With regard to the second element, the Supreme Court has ruled that

> a "policy" giving rise to liability cannot be established merely by identifying a policymaker's conduct that is properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

Bd. of the Cnty. Comm'rs v. Brown, 520 U.S. 397, 399 (1997) (citing Monell). "[T]o demonstrate a policy or custom, it is generally necessary to show a persistent and wide-spread practice." Lavassani v. City of Canton, 760 F. Supp. 2d 1346, 1360 (N.D. Ga. 2010) (citing Church v. City of Huntsville, 30 F.3d 1332, 1345 (11th Cir. 1994) and Depew v. City of St. Marys, 787 F.2d 1496, 1499 (11th Cir. 1986)). The policy or custom identified by a plaintiff must be "a practice that is so settled and permanent that it takes on the force of the law." Monell, 436 U.S. at 690-91. This level of specificity "ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." Brown, 520 U.S. at 402-03. "[T]his prevents the imposition of liability based upon an isolated incident." McDowell, 392 F.3d at 1290.

In the present action, Drew's claims stem from one allegedly unlawful arrest and detention in November of 2018. Further, his Amended Complaint includes the following vague and conclusory allegations:

9

> The County has a persistent and wide spread and permanent practice of violating civil rights. For example, cases involving civil rights violations against the County that have been filed in this Court, are:
>
> - Jordan v. Cobb Co. 1:99cv2837 (N.D. Ga. 1999);
> - Murdock v. Cobb Co. 1:12cv01743 (N.D. Ga. 2012);
> - Barnes v. Cobb Co. 1:14cv00948 (N.D. 2014);
> - Perez v. Cobb Co. 1:16cv00902 (N.D. 2016).
>
> The County tacticity [sic] authorizes repeated constitutional violations or displays of deliberate indifference to police and judicial misconduct, making its failure to correct constitutionally offensive actions the County custom or practice. This is true even for a female County Commissioner who was harassed by police forcing her to write a memorandum to County Commissioners.

Am. Compl. ¶¶ 14-15. Although Drew generally alleges that Cobb County has a practice of violating individual's civil rights, the factual allegations in Drew's Amended Complaint fall short of being the sort of "custom or practice" implicating Section 1983 liability against a county. All of Drew's allegations surrounding his November arrest involve one incident and there is no allegation that it was the result of any of the type of civil rights violations at issue in the cases cited in the Amended Complaint. Moreover, none of the cases Drew cites resulted in a finding that Cobb County was responsible for any civil rights violations. Order, Perez v. Bastis, No. 1:16-cv-0902-SCJ (N.D. Ga. Nov. 28, 2017) (granting defendant Cobb County's motion to dismiss all claims); Stipulated Dismissal with Prejudice, Barnes v. Cobb Cnty., No. 1:14-cv-0948-TWT (N.D. Ga. Dec. 14, 2019) (case

10

voluntarily dismissed after the Parties reached a settlement); Stipulated Dismissal with Prejudice, Murdock v. Cobb Cnty., No. 1:12-cv-1743-RWS (N.D. Ga. Aug. 7, 2014) (same); Order, Jordan v. Cobb Cnty., 1:99-cv-2837-JEC (N.D. Ga. Sept. 28, 2001) (granting motion for summary judgment as to claims against Cobb County). Finding Cobb County liable based on Drew's other vague allegations, assuming their veracity, "is exactly what Section 1983 is designed to prevent." Lavassani, 760 F. Supp. 2d at 1360 (citations omitted).

In Lavassani, the Court found the evidence of a series of events that related solely to the plaintiffs and the City of Canton police department insufficient to support a finding that there was a persistent and widespread custom or practice that could deprive plaintiffs of their constitutional rights. Lavassani, 760 F. Supp. 2d at 1360-61 ("The plaintiffs' arguments are an effort to create liability by extracting key phrases and terms from applicable case law and then misapplying those phrases and terms to the events surrounding May 1-2, 2008. . . . Further, the plaintiffs failed to identify any evidence, outside of the events surrounding May 1-2, 2008, to support a finding of 'a persistent and widespread practice' and awareness by city officials.") Assuming their veracity, the facts alleged in Drew's Amended Complaint are similar to the facts the court in Lavassani found to be insufficient to support Section 1983 liability against a municipality. Drew's

11

general allegations that Cobb County has previously deprived individuals of their civil rights, even coupled with his allegations that he was unlawfully arrested, are not sufficiently persistent or widespread. Further, Drew's Amended Complaint is devoid of any specific allegation outside the incident involving him. Even if proven true, Drew's allegations fall short of demonstrating that Cobb County has a custom or policy permitting the unlawful seizure and detention of Drew in violation of the Fourth Amendment

Accordingly, this Court **DISMISSES** Drew's Section 1983 claims for unlawful seizure and detention in violation of the Fourth Amendment (Count One) and violation of due process under the Fourteenth Amendment (Count Two) against Cobb County.

### B. Federal Claim Against Sonya Allen and Nathanial Nation

Defendants argue, *inter alia*, that Drew's Section 1983 claim for unlawful seizure and detention in violation of the Fourth Amendment (Count One) against Allen and Nation fails because it is barred by the doctrine of quasi-judicial immunity. Defs.' Br. at 18-20. The Court agrees. "[L]aw enforcement personnel, acting in furtherance of their official duties and relying on a facially valid court order, are entitled to absolute quasi-judicial immunity from suit in a section 1983 action." Roland v. Phillips, 19 F.3d 552, 556 (11th Cir. 1994).

Taking the allegations as true, to the extent Allen and Nation had any role at all, they executed an affidavit for the arrest of Drew based on Judge Child's Contempt Order. See Am. Compl. ¶ 22. This is the type of activity that is protected by absolute quasi-judicial immunity.

> To the extent that [law enforcement officers] were involved in effecting the plaintiffs' arrest after Judge Smith issued the arrest warrants, "law enforcement personnel, acting in furtherance of their official duties and relying on a facially valid court order, are entitled to absolute quasi-judicial immunity from suit in a section 1983 action." Roland, 19 F.3d at 556. Arrest warrants are valid on their face when "the affidavits attached to the warrants provided probable cause to believe that [the suspect] has committed the offenses charged." Pickens v. Hollowell, 59 F.3d 1203, 1206 (11th Cir. 1995). The arrest warrants here were facially valid because the affidavits attached to them provided probable cause to believe that the plaintiffs had committed the crime. As for executing the arrest warrants, because [the law enforcement officers] were entitled to quasi-judicial immunity for the actions, if any, that they took in that regard, the district court did not err in granting summary judgment [for defendants].

Byrd v. Jones, 673 F. App'x 968, 974 (11th Cir. 2016). Because Allen's and Nation's actions were in furtherance of Judge Childs' Contempt Order directing Drew's arrest in the event he did not make the $14,505.00 payment by November 5, 2018, they are entitled to absolute quasi-judicial immunity and the Section 1983 claim in this case against them is barred. Accordingly, this Court **DISMISSES** Drew's claims for unlawful seizure and detention in violation of the Fourth Amendment (Count One) against Allen and Nation.

### C.  Pendent State Law Claims – Counts Three through Seven

Drew's Amended Complaint includes claims for unlawful seizure and detention, false imprisonment, and intentional infliction of emotional distress. See Am. Compl. ¶¶ 59-89.  Having resolved the Section 1983 claims in Counts One and Two, the Court still must determine whether it should exercise supplemental jurisdiction over the remaining state law claims in Counts Three through Seven. See 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

The Court may decline to exercise supplemental jurisdiction over non-diverse state law claims if: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. See 28 U.S.C. § 1367(c).  In addition, in deciding whether to exercise supplemental jurisdiction over pendent state law claims under § 1367(c), a court should also consider the

interest of judicial economy, convenience, fairness to the litigants, and comity. Palmer v. Hosp. Auth. of Randolph Cnty., 22 F.3d 1559, 1569 (11th Cir. 1994). The Eleventh Circuit Court of Appeals has noted that "if the federal claims are dismissed prior to trial, Gibbs strongly encourages or even requires dismissal of state claims." L.A. Draper & Son v. Wheelabrator-Frye, Inc., 735 F.2d 414, 428 (11th Cir. 1984) (citing United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)).

Given the dismissal of the federal claims, the outcome of this dispute now depends exclusively on issues of state law. The Court finds that judicial economy, fairness, and convenience favor declining to exercise supplemental jurisdiction over Drew's remaining state-law claims. See Baggett v. First Nat'l Bank of Gainesville, 117 F.3d 1342, 1353 (11th Cir. 1997) (citing Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7, (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."); see also Eubanks v. Gerwen, 40 F.3d 1157, 1162 (11th Cir. 1994) (remanding the case to the district court to consider dismissing plaintiff's state-law claims without prejudice so that the plaintiff could pursue those claims in

15

state court where the court had granted summary judgment to the defendant on plaintiff's federal-law claims).

In light of the above authority, the Court declines to exercise jurisdiction over Drew's state law claims (Counts Three through Seven), which are hereby **DISMISSED WITHOUT PREJUDICE.**

## IV. CONCLUSION

Based on the foregoing, it is hereby **ORDERED** that Defendants' Motion to Dismiss Plaintiff's First Amended Complaint [Doc. 23] is **GRANTED** as to the federal claims raised in Counts One and Two. As this Court declines to exercise supplemental jurisdiction over the state law claims, it is further **ORDERED** that Counts Three through Seven of the First Amended Complaint are **DISMISSED WITHOUT PREJUDICE.**

The Clerk is **DIRECTED** to close this case.

**IT IS SO ORDERED** this 29th day of July, 2021.

_/s/ Mark H. Cohen_
MARK H. COHEN
United States District Judge